Judge Robertson
delivered the opinion of the Court.
ON the 10th day of May, 1822, Thomas Dejarnet signed and acknowledged, in th'e presence of three attesting witnesses, a deed for emancipating Fanny his slave.
At the October term, 1824, of the Oldham county court, Fanny moved the court to hear proof of the deed, and admit it to record. The administrator of Dejarnet, (he having died) resisted the motion. After a thorough examination of the subscribing witnesses, and others,the court refused to record the deed; and thereupon, Fanny has prosecuted this writ of error.
The act of 1798, declares that no slave shall be emancipated, except by deed, acknowledged and recorded in the county court.
But the act of 1800, declares, that slaves may be emancipated by any instrument of writing.
Tt has been decided, and we have no doubt, correctly, by this court, in “Winney vs. Cartwright, III. Marshall, 493, that the act of 1800, repealed so mllch of that of 1798, as required a seal, and record-*n8 in ^ie county court, as necessary to the emanci» pation of a slave.
But in the same case, it is stated, as the opinion of a majority of the court, that the person liberated, may ^*ave fh*3 instrument of manumission proved ancl recorded “inperpetuam rei, memoriam,” and that, consequently, such an instrument, like a will, may be recorded on proper proof of its execution, although a(q. 0f jg00, does not expressly require it to be recorded, nor provide any mode for recording it.
Whatever might have* been our opinion on this last point, if no construction had ever been put upon these two statutes, by this court, we are not inclined to make an innovation on what has been recognized, and acqiuesced in, as the law of the land, when the case involving no principle is such, that although the correctness of the exposition which has been given, is *231 somewhat questionable, it is not so important^ whether the law shall be expounded inone way orinanother; as it is, that it should be known and established
The only point to be considered, therefore, is, whether Fanny proved such facts, as entitled her to have her deed recorded.
The execution of the deed was well proved; the fact of its having been signed, sealed and acknowledged, was not disputed. But the capacity of De-jarnet, was called in question. And on this fact, the evidence was various and apparently contradictory. Two of the subscribing witnesses, and some others, swore that they were inclined to the opinion, that when he acknowledged the deed, Dejarnet was “won compos but they admitted that he was as rational, as he had been, for some years, and some of them assigned reasons for their opinions, which would not justify them. They also proved, that he was in the habit of making shuttles and selling them.
On the other side, it was proved, that Dejarnet had once been found a lunatic, by inquisition, and bad been under4 the controul of a committee; but, that before the deed of emancipation was acknowledged, he had been liberated from his committee, and restored to the dominion of his property, on proof of his restoration to reason.
It was also proved, that he had made two wills, many years before the date of the deed, and when his sanity was not doubted, in both of which, he liberated Fanny. It was also proved, that it was the “dying request” of Mrs. Dejarnet, (the wife of Thomas,) that Fanny should be manumitted, whenever she should bear five children, one for each of her (Mrs. D’s) children; and that Fanny had become the mother of more than five children, when the deed was executed; and other witnesses swore, that they had no doubt, that he was compos mentis; one of these was a subscribing witness to the deed.
These facts tend to shew, that it was the settled and matured purpose of Dejarnet, for years, to set Fanny free; and that he was urged by the last injunctions of his deceased wife, not to change this deter- *232 miftation, but to give liberty to Fanny, so soon as she should be able to present to each of his children* one of her own, as the price of her freedom.
Denny and Armstrong, for plaintiff; Monroe, for defendant.
He did, not only what he had been long predetermined to do, but what, as a rational man, he would have felt it due to the memory of his departed wife, not to neglect, and what he frequently said, he never would omit. We cannot doubt, that he knew well, what he was doing, and was fully competent, (although a man of dim intellect) to estimate the consequences. The facts evince the exercise of reason, as well as the flow of a reflecting benevolence. Such an act could not be nullified by this court.
The deed should be recorded, not because its registration will be necessary, to the freedom of Fanny, but because she desires it for security, and desiring it, has a right to do it, according to the case of Winney vs. Cartwigbt.
How far the recording of the deed, will conclude the rights of all concerned is a question, that is not now before us.
Wherefore, the order of the county court is reversed, and set aside, and the case remanded with instructions to admit the deed to record.